CHARLOTTE PETTY v. ST. LOUIS & MERAMEC RIVER RAILROAD COMPANY, Appellant.

Division One, February 10, 1904.

1. **Negligence:** RATE OF SPEED. Where no law or contract reg-ulating the rate of speed of the street car which injured plain-tiff is shown, the common law prevails.

2. ———: ———: NON-EXPERT. Where a witness does not show himself qualified by training or experience to speak on the sub-ject of the rate of speed at which the car which struck plain-tiff was running, his testimony that it was running at the rate of twenty-five miles per hour is not worthy of consideration.

3. ———: ———: UNLAWFUL RATE. There were no houses on the side of the street where plaintiff was for 1,200 feet, and no intersecting street, the track was straight and there was nothing to interfere with the view for that distance, and anyone standing where plaintiff's testimony says she was could see 1,200 feet in the direction from which the car came; it was lighted by electricity, had a headlight burning, made considerable noise, was running down a slope in the streets of a suburban town, the gong was sounded, and had plaintiff looked she could have seen and heard the car coming. *Held*, that the running of the car down the slope at the rate of fifteen miles an hour and slowing down to eight miles an hour as it approached the crossing, could not be held as a matter of law to be a negligent rate of speed.

4. ———: IMMINENT PERIL: SEEING IN TIME. Where the evidence is that the plaintiff could have seen the approaching car as easily as the motorman could have seen her open wagon near the track at a time when she was in a safe place, and there is no evidence that he failed to stop the car in the shortest possible space after he saw her peril, no instruction should be given that, if the motorman could have seen plaintiff's peril in time to avert the injury and failed to do so, the company is liable.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney*, Judge.

REVERSED.

*McKeighan & Watts* and *Robert A. Holland, Jr.*, for appellant.

(1)   The court erred in refusing the instruction in the nature of a demurrer to the evidence offered by defendant at the close of the plaintiff's evidence in chief and at the close of all the evidence.   (a)   There was no evidence of any negligence on the part of defendant. (b)   Said instruction should have been given because the evidence shows clearly that the plaintiff was guilty of negligence that directly contributed to the accident. And also that her brother, who was acting as her agent, was guilty of negligence.   (2)   The court erred in giving instruction 2 for plaintiff.   Said instruction

allowed the plaintiff to recover if the jury believed from the evidence that the motorman, after he saw, or might have seen, the plaintiff in a position of peril, could, by the exercise of ordinary care, have prevented a collision. It is erroneous because there is no evidence upon which to predicate it. Stone v. Hunt, 114 Mo. 66; State v. Hope, 102 Mo. 410; Evans v. Interstate Co., 106 Mo. 594; State v. Brown, 145 Mo. 690; Yarnell v. Railroad, 113 Mo. 570; Waldheir v. Railroad, 89 Mo. 106; Woods v. Campbell, 110 Mo. 572. (3) The court erred in allowing the witness Leming to testify, over the objection of defendant, that the car in question was running at the rate of twenty-five miles an hour. This witness showed no qualification whatever that would allow him to testify as an expert as to the rate at which said car was approaching. Naughton v. Stagg, 4 Mo. App. 271; Thompson v. Ish, 99 Mo. 160; Sater v. Railroad, 44 Mo. App. 488; Hampton v. Massey, 53 Mo. App. 501.

*R. L. & John Johnston* for respondent.

Viewed from any standpoint, the judgment of the trial court should be affirmed. The place of the collision—a dangerous crossing within the city limits—called for the utmost care and watchfulness on the part of the motorman. If his headlight was burning, it lighted up the track for full seventy-five feet in advance of the car, and by exercise of proper care he must have seen, or should have seen, the dangerous proximity of respondent's horse and wagon to the car track, in time to have stopped his car and avoided the collision. If the headlight was not burning, he was grossly negligent in running his car at any rate of speed in the dark. It was attempted by appellant to show that certain willows and trees on the southwest corner of Plant avenue might have prevented the motorman from seeing respondent in time to avoid the accident, but this contention will

not avail appellant.   If the willows or trees stood on appellant's right of way, obstructing the view, it was negligence on the part of appellant to permit them to stand there.   If not on the right of way, yet obstructing the view in the approach to the Plant avenue crossing, this would be an additional reason for care and watchfulness on the part of the motorman in approaching that crossing.   The evidence in the case utterly fails to show any contributory negligence on the part of respondent, or on the part of her brother, who drove the wagon at the time of the accident.   But, on the contrary, it is uncontroverted that both of them stopped and looked up and down the track and listened for a car before starting to drive across the car tracks.   Burger v. Railroad, 112 Mo. 238; Hilz v. Railroad, 101 Mo. 36; McPheeters v. Railroad, 45 Mo. 22.   From the mass of decisions of this court, upon the questions of negligence and contributory negligence, respondent will only cite:   Easly v. Railroad, 113 Mo. 236; Liddy v. Railroad, 40 Mo. 506; Hanlon v. Railroad, 104 Mo. 381.

MARSHALL, J.—This is an action for twenty thousand dollars damages for personal injuries sustained by the plaintiff, on November 29, 1899, at the intersection of Longfellow and Plant avenues, in the town of Webster Groves, by reason of a collision between one of defendant's cars  and an open wagon in which the plaintiff and her brother were riding.   There was a judgment for the plaintiff for two thousand dollars, and defendant appealed.   The negligence charged in the petition is as follows:

"Plaintiff alleges, as the specific facts constituting the said negligence of defendant, that at the time and place of said collision defendant's said electric car was being run by its said agents and employees at a rapid and dangerous rate of speed, on a descending grade. The night was growing dark, but said car carried no headlight, no bell was sounded and no warning of any

kind given of the approach of said car until too late to enable plaintiff and her said brother to escape said collision; that defendant's agent and motorneer in charge of said car saw, or by the exercise of ordinary care would have seen, the danger and peril of the plaintiff, in time to have stopped, or so have checked the speed of said car, as to avoid said collision, but failed to either stop, or check the speed of said car.''

The answer is a general denial and a special plea that the plaintiff and her brother were guilty of contributory negligence.

The case made is this:

Longfellow avenue runs east and west, and Plant avenue runs north and south. The defendant has an electric street railroad on Longfellow avenue. The cars run west on the tracks on the north side of the street and east on the tracks on the south side of the street. From the south track to the south side of Longfellow avenue at Plant avenue it is twenty-two feet. From Plant avenue looking westwardly, Longfellow avenue is perfectly straight for a distance of twelve hundred feet, and the grade rises three and a half feet to the hundred. The plaintiff, her mother, two sisters and her brother raised vegetables on a farm south of Webster Groves, and she and her brother sold the same to residents of Webster Groves, going into town two or three times a week. On the day of the accident the plaintiff, a woman twenty-three years of age, and her brother, two years younger, were driving north on Plant avenue, in an open wagon, in the evening between dusk and dark. When they reached Longfellow avenue she and her brother say they stopped with the horse on Longfellow avenue and the wagon just south thereof. They say that while in that position they could see west on Longfellow avenue at least a block. There were no houses on that side of Longfellow avenue, and nothing to obstruct their view for at least twelve hundred feet. They

say they looked and listened and could neither see nor hear any car approaching. They then started the horse forward, and when the horse and the fore wheels had gotten across the south track they saw a glimpse of light and looked and saw a car right upon them; that the brother grabbed the whip but before the wagon could clear the track, the car struck the hind wheel of the wagon, and she was thrown out and injured. They say they saw no car, saw no headlight on the car, and heard no bell rung and heard no noise of an approaching car.

George W. Leming testified for the plaintiff that he lived in Webster Groves and was engaged in the express business; that he was driving west on Lockwood avenue towards Plant avenue, and when he reached Plant and Lockwood he saw the headlight of the car coming eastwardly from the raise at the Congregational church (which was twelve hundred feet west of Plant avenue), and that he also saw the plaintiff's wagon was coming north on Plant avnue towards Lockwood avenue; that when he got to the culvert, the motorman on the electric car was ringing his bell and he wondered whether he was ringing for him or the other wagon; that ''at that time the plaintiff's horse was close to the mouth of Plant avenue.'' Over the objection of the defendant that he had not shown himself qualified to speak, this witness was permitted to testify that the car was running at the rate of twenty-five miles an hour, but he said he could not say whether it was running faster or slower than the cars usually ran at that point. He further testified that he saw the headlight burning on the car, and that when he passed Plant avenue, the plaintiff's wagon was fifteen or twenty-five steps from Lockwood avenue, and that the car was in the neighborhood of from fifty to seventy-five feet west of the culvert; that anybody coming into Lockwood avenue could see a car for about four or five hundred yards and sometimes even farther than that; that he did not notice any slacking of the speed before the collision; that when the

motorman began to ring the gong, he kept ringing it.

This was all the evidence for the plaintiff outside of the testimony as to the nature and extent of her injuries, as to which the doctors disagreed as to whether they were simple and not serious, or were grave and probably permanent. The defendant demurred to the evidence, the court overruled the demurrer and the defendant excepted.

Daniel R. Fauste testified for the defendant that he was the motorman of the car; that from the Congregational church at the top of the slope until he got three-fourths of the way down the slope, the car ran at a speed of fifteen miles an hour, but before the car reached Plant avenue it had slowed down to eight or ten miles an hour; that he had no power on going down the slope; that as he went down the slope he sounded the gong and sounded it more as he approached Plant avenue; that there was a headlight burning on the front of the car; that he did not see the plaintiff's horse and wagon until his car got within about fifteen or twenty feet of Plant avenue; that it was dark and the horse was not over three or four feet from the track at the time; that he rang his bell loudly and applied his brakes to stop and at that time the wagon was driven right rapidly across the track in front of the car; that he applied the brake and also reversed the current, and that the car ran just its own length, thirty-five to forty feet, after it struck the wagon. On cross-examination he said that he commenced to take up the slack of his brake when about two hundred yards west of Plant avenue; that the headlight on the car threw a light about fifty or seventy-five feet in front of it; that going down grade at the rate of ten miles an hour the car could not be stopped in less than about seventy-five feet.

H. O. Rockwell testified for the defendant that he is the assistant manager of the defendant and is an electrical engineer; that it is twelve hundred feet, by actual measurement, from the west line of Plant avenue

to the top of the slope, at the Congregational church, and that the grade is three and a half feet to the hundred; that it is twenty-two feet from the east-bound track to the south line of Longfellow avenue; that a person coming north on Plant avenue, when he reached the gutter on the south line of Longfellow avenue, could see to the top of the hill at the Congregational church; that there was nothing to obstruct the view; that a car like the one in question would make considerable noise when coming down, the slope.

Mr. Cheatham testified for the defendant that he was driving west on Lockwood avenue, and was about one hundred and fifty feet east of Plant avenue when the collision occurred; that he saw the car coming down the slope and saw the headlight; that the car stopped before it got to where he was and he thinks it stopped five or six feet from where the accident happened.

T. L. Murrier testified for the defendant that he was the conductor of the car; that the car ran down the slope at a speed of fifteen miles an hour; that the gong was sounded constantly as the car went down the slope; that the sounding of the gong and the reversal of the current attracted his attention; that the headlight was burning on the car, and was broken by the collision; that the car did not run more than its own length after striking the wagon.

This was all the evidence in the case. The defendant again demurred to the evidence, the court overruled the demurrer and the defendant excepted. The plaintiff's instructions predicated a right to recover upon a negligent rate of speed of the car, and upon the proposition that the defendant's servants saw or might have seen that the plaintiff was in a position of imminent peril in time to have stopped or checked the car and to have averted the accident, and negligently failed to do so. There was a verdict for two thousand dollars. This court has jurisdiction because the constitutionality of the nine-jury law was called in question, but as

that question has been settled it is not necessary to refer to it here.

## I.

The plaintiff bases a right to recover upon the rate of speed at which the car was run.

No law or contract regulating the rate of speed of the defendant's cars was shown. The common law therefore applies. One witness for the plaintiff put the speed at twenty-five miles an hour, but as he did not show himself qualified by training or experience to speak to that question, his testimony need not be further considered. The only evidence in the case is that the car ran down the slope at the rate of fifteen miles an hour and that when it approached Plant avenue, it was slowed down to a speed of eight to ten miles an hour. On the face of the case, such a rate of speed at the time and place and under the circumstances of this case can not be held, as a matter of law, to amount to negligence. There were no houses on the south side of the street for about twelve hundred feet west of Plant avenue and so far as appears there were no intersecting streets; the track was straight and there was nothing to interfere with the view for that distance. Anyone standing in the gutter at the intersection of Longfellow and Plant avenues, which was twenty-two feet south of the east-bound track, could see westwardly for twelve hundred feet. The car was lighted by electricity, and had a headlight burning. The car made considerable noise running down the slope and the gong was sounded. Anyone who had looked could have seen and heard the car coming. Under such circumstances a rate of speed of fifteen or even twenty-five miles an hour does not, *per se*, constitute common-law negligence.

There was, therefore, no basis for a recovery upon such a theory and the plaintiff's first instruction which

authorized a verdict upon that theory, was clearly erron-
eous.

## II.

The second contention of the plaintiff is that the
operator of the car saw, or by the exercise of ordinary
care might have seen, that the plaintiff was in a position
of imminent peril, in time to have stopped or checked
the car and to have averted the injury. The argument
of the plaintiff is that the track was straight for twelve
hundred feet; that the headlight lit up the track for
fifty to seventy-five feet in front of the car; that, there-
fore, the operator of the car could have seen that the
plaintiff was crossing the track and was in imminent
danger, when the car was seventy-five feet distant from
the wagon, and that the car could have been stopped or
at any rate its speed could have been checked so as to
avoid the collision.

But if all this be conceded, it would not follow that
the plaintiff was entitled to recover, for it is equally true
that if the operator of the car could have seen the plain-
tiff's wagon when twelve hundred feet distant, the plain-
tiff could have seen the car at the same distance. The
car was lighted by electricity and had a headlight. The
wagon was not lighted at all. The plaintiff could have
seen the car much more easily and distinctly than the
operator of the car could have seen the wagon. Yet the
plaintiff and her brother swear that when they reached
the intersection of Plant avenue and Longfellow avenue
and when their horse had gone onto Longfellow avenue
and the wagon was still on Plant avenue, they stopped,
looked and listened, and that they neither saw nor heard
a car coming. They were then within twenty-two feet
of the track and could see twelve hundred feet up the
track towards the west. If this is true, and if they could
not see a well-lighted car, with a headlight within twelve
hundred feet of them, by what manner of reason can

it be said that the operator of the car could see them and their wagon that was not lighted? But if the operator of the car could have seen the plaintiff at that time and distance, he had a right to assume that the plaintiff could and would also see the car and that the plaintiff would stop before getting into a position of peril, and certainly at that time the plaintiff was not in a position of peril, for her wagon was twenty-two feet south of the track.

The plaintiff says that having thus stopped, looked and listened and neither seeing nor hearing a car coming, she proceeded to cross the track; that she was riding in an open wagon, and that she did not look again until the horse and front wheels of the wagon had cleared the north rail of the east-bound track and while the rear wheels of her wagon were on the track, and then she saw "a glimpse of light" and looked towards the west, and saw the car right upon them, and in an instant the collision occurred. She also says she saw no headlight, and heard no bell rung, although her own witness, Leming, and four other witnesses for the defendant testify that there was a headlight burning on the car and that the gong was being loudly sounded. The plaintiff's contention is that the headlight lit up a space of fifty or seventy-five feet ahead of the car, the motorman could have seen the plaintiff's wagon on the track and could have seen the imminent danger of the plaintiff when seventy-five feet distant from the wagon, and could have stopped or checked the speed of the car in time to avert the collision and did not do so.

Several conclusive answers to this contention are apparent. In the first place there is no evidence at all that the motorman failed to stop the car or check its speed after he saw or might have seen the imminent peril of the plaintiff. On the contrary, all the testimony is that he applied the brakes and reversed the current and sounded the gong loudly and continuously; and did everything that could be done. It is true that

the plaintiff's witness, Leming, said that he did not notice that the speed of the car was checked, but he also testified that when he got to the culvert, which was twenty-five feet west of Plant avenue, the car was fifty to seventy-five feet west of the culvert, and that the "plaintiff's horse was close to the mouth of Plant avenue." So that if this witness's testimony is to control the case, the plaintiff was at least twenty feet distant from the track when the car was seventy-five or one hundred feet west of Plant avenue, and, therefore, the plaintiff was not in a position of imminent peril at that time, and there was no obligation resting upon the motorman to stop or check the speed of the car, but this witness said he was ringing his bell and he wondered whether he was ringing it for him or the other wagon. If absolute credence be given, therefore, to everything this witness said, it showed that the motorman did all he was obligated to do, and that the plaintiff was not in any danger whatever and was not on the track at all when the car was within seventy-five or one hundred feet of the place of collision. The testimony of this witness, therefore, completely disproves the plaintiff's contention that she was in a position of imminent peril, and that the motorman saw it or might have seen it, in time to have averted the injury. And on the contrary, the testimony of this witness corroborates the testimony of the motorman that when the car was within less than seventy-five feet of Plant avenue the plaintiff drove on the track, and this being so, and under the uncontradicted testimony that the car could not have been stopped in less than seventy-five feet on that grade when running eight or ten miles an hour, this contention of the plaintiff utterly fails.

Moreover, if the testimony of the plaintiff be true that she stopped and looked west when she reached the south side of Longfellow avenue and did not see a car coming, it is incomprehensible how a collision could have occurred. For this involves the deduction that a

car ran twelve hundred feet, while the plaintiff's wagon was going twenty-two feet from the south rail of the east-bound track to the south line of Longfellow avenue and the width of the track, say about five feet. In other words, that a car travelled twelve hundred feet while the wagon was travelling twenty-seven feet. This would require the car to travel a little over forty-four times as fast as the wagon. If the car was travelling fifteen or twenty-five miles an hour and the wagon was travelling only one mile an hour, the car would be travelling fifteen or twenty-five times as fast as the wagon. And even assuming that the car was travelling twenty-five times as fast as the wagon, the car would only travel six hundred and seventy-five feet while the wagon was travelling twenty-seven feet. This extreme concession as to the rate of speed that the car and the wagon were respectively travelling, shows that when the plaintiff's wagon reached the south line of Longfellow avenue, or at any rate when the wagon began to move from that point, the car was within six hundred and seventy-five feet of the point of the collision. This being true, it can not mathematically be true that the plaintiff could not see the car coming, for she had an unobstructed view towards the west of twelve hundred feet, and the car was big and lighted by electricity and had a headlight, and if she had looked she could not have failed to see the car, and under these circumstances she can not be heard to say she did not see the car in ample time to have stopped before she got into a position of peril, and it was contributory negligence on her part not to do so, which bars her recovery. [Guyer v. Railroad, 174 Mo. 344; Carroll v. Transit Co., 107 Mo. 653; Boyd v. Railroad, 105 Mo. 371; Butts v. Railroad, 98 Mo. 272; Henze v. Railroad, 71 Mo. 636; Jennings v. Railroad, 112 Mo. 268; Maxey v. Railroad, 113 Mo. 1; Sullivan v. Railroad, 117 Mo. 214; Kelsay v. Railroad, 129 Mo. 362; Moberly v. Railroad, 98 Mo. 183.] The plaintiff made out no case and the demurrers to the evidence should

have been sustained. The judgment is reversed. All concur.