## ST. LOUIS & S. F. R. CO. v. MANLEY.

No. 9696—Opinion Filed March 30, 1920.

(Syllabus by the Court.)

**Carriers—Injuries to Person in Charge of Stock—Negligence—Evidence.**

Plaintiff shipped his household goods and live stock from Sulphur to Durant in a car chartered from defendant company. By the terms of the contract plaintiff was entitled to ride in the caboose free of charge, but providing that he should not go on or be on any freight car while switching was being done. The car so chartered reached Madill, an intermediate point, about dark, and was side-tracked in order to be taken on another and different road to Durant the following morning. Between 9 and 10 o'clock p. m. plaintiff and another party went into the car, as alleged by plaintiff, for the purpose of caring for the live stock and nailing up a partition, this work consuming about 30 minutes. The parties then lay down. Sometime after 12 o'clock plaintiff arose and again commenced nailing on the partition. While so engaged the car received a sudden jar or bump occasioned by the switching. One of the horses was thrown against the partition with sufficient force to break down same. The plaintiff was thrown against a buggy, resulting in an injury to his back. But there was nothing in the evidence tending to prove defendant knew plaintiff was in the car at the time. Held, no evidence from which negligence on the part of defendant could be inferred.

Error from District Court, Bryan County; Jesse M. Hatchett, Judge.

Action for personal injuries by R. C. Manley against the St. Louis & San Francisco Railroad Company, judgment for plaintiff, and defendant brings error. Reversed and remanded.

W. F. Evans, R. A. Kleinschmidt, and J. H. Grant, for plaintiff in error.

W. H. Ritchey, for defendant in error.

PITCHFORD, J. The plaintiff, R. C. Manley, commenced this action in the district court of Bryan county against the defendant, St. Louis & San Francisco Railroad Company, for personal injuries alleged to have been inflicted by the defendant on the 11th day of January, 1917. Defendant at

the time of the alleged injury was in charge of a household shipment, which originated at Sulphur, Okla., destination at Durant, Okla. Plaintiff accompanied the shipment as caretaker under a contract which provided free transportation for himself as such caretaker. The train upon which the plaintiff and the shipment were transported arrived at Madill, a division point on the defendant's railroad, between sundown and dark on January 11, 1917. He was advised by the defendant's employes that his car would not leave Madill until eight o'clock the next morning. The car was detached from the train which took it into Madill, and placed on a side-track. Plaintiff went up town with his family after his arrival at Madill, and sometime between nine and ten o'clock he returned to the car accompanied by a man by the name of Fisher. He claims that he returned to the car for the purpose of feeding his stock and repairing a partition in the car which had been torn down in transit from Sulphur to Madill. Mr. Fisher testified that the first thing they did as soon as they arrived at the car was to make down a bed, that he did not see plaintiff feed his stock, and sometime after they retired plaintiff got up and while he was hammering on the partition other cars were coupled into the car in which the plaintiff was, and they got a very hard bump and the plaintiff was thrown down. Plaintiff testified that he was hurt by the fall, but did not consider his injury at all serious, and that he proceeded on to Durant the next day; that it was two or three days later before he felt any ill effects from his fall, and that he did not call a doctor until about 20 or 25 days after his injury. Plaintiff further stated that after he had reached the car with Mr. Fisher, he first fed his horses, and then nailed up the partition, which required about 30 minutes, after which he lay down. Evidence on the part of the plaintiff is indefinite and uncertain as to the length of time intervening after the plaintiff had reached the car until the injury complained of occurred. Plaintiff says it might have been an hour, an hour and a half, or two hours. The conductor, however, who had charge of the train, states positively that the switching did not begin until after midnight. The following contract was entered into between the plaintiff and the defendant:

"I, the undersigned owners, or in charge of the livestock mentioned in the within contract, in consideration of free pass granted us by the receivers of the St. L. & S. F. R. R. Co., hereby agree that it shall not be liable to us for any injury or damage suffered by us while in charge of said live stock, or on our return passage. We agree to the terms of sections 14 and 15 of the within contract, and to observe the following regulations, and we release the railroad company and those operating the railroad from liability for injury or damage suffered by us if injured while violating said terms and regulations. We will remain in the caboose while the train is in motion, and will get on and off said caboose while it is still. We will not get on or be on any freight car while switching is being done. We will not walk or stand on any track, station or other place at night without a lantern."

In order for plaintiff to recover it would not only be necessary for him to show by preponderance of the evidence that he had a right to be in the car at the time of the alleged injury, but, in addition thereto, that the defendant knew that he was in the car or had reason to believe that he might be there, and that the injury was occasioned by the negligence of the defendant. We have carefully gone into the evidence in order to satisfy ourselves whether or not there was any evidence of negligence chargeable to the defendant for the jury to consider.

The contract between the plaintiff and defendant, whereby the plaintiff was entitled to ride upon the train of defendant without extra charge, provided specifically that the plaintiff would not be on the car while switching was being done. Plaintiff says that before he went into the car he saw someone standing near, wearing a cap and uniform and holding a lantern, and supposed him to be connected with the railroad company; that this party instructed him to fix the partition, and that he entered the car for the purpose of feeding his stock and nailing up the partition. According to his own testimony this work consumed about 30 minutes, and after this he lay down. The conductor on the switcher testified that he was around the yards during the night, that he did not see anyone in the car that night, or around it, and that he heard no nailing or any noise in the car except the stamping of horses' feet. The brakeman testified that he was in and about the cars all night; that no one spoke to him about a car of household stuff; that he heard no hammering or anything of the kind inside the car, and did not see anyone in or about the car that night.

Under the contract the caboose was the only place where the plaintiff was authorized or entitled to ride. Plaintiff knew the car had to be switched at Madill. From the evidence the conclusion is irresistible that the plaintiff and Fisher went to the car not solely for the purpose of feeding his horses and repairing the partition, but that they went there to sleep and to spend the night. This is shown by the fact that after reach-

ing the car the first thing they did was to make down a bed, and immediately thereafter, as testified to by Fisher, he and the plaintiff lay down. The plaintiff, however, says it was probably 30 minutes before he lay down.

Conceding that the plaintiff had a right to enter the car for the purpose of feeding his stock and nailing up the partition, he was not justified in remaining in the car thereafter, especially when he knew that sometime during the night it would be necessary for the switching to be done. The plaintiff was not excused from observing that part of the contract containing the provision that he should not be on the car while switching was being done, notwithstanding the suggestion, from someone with a cap and uniform on holding a lantern whom he took to be connected with the railroad, to enter the car and nail up the partition, and remaining there the balance of the night. He did this knowing that the car would have to be switched and put into another train, and in doing this he knowingly violated the terms of his contract.

Section 1423, Revised Laws 1910, provides as follows:

"In case any passenger on any railroad shall be injured while on the platform of a car while in motion, or in any baggage, wood or freight car, in violation of the printed regulations of the corporation posted up at the time in a conspicuous place inside of its passenger cars then in the train, such corporation shall not be liable for the injury, if it had furnished room inside its passenger cars sufficient for the accommodation of its passengers."

Plaintiff, being in the car at the time of the switching, was violating, not a printed regulation, but the specific terms of the contract he had entered into with the defendant. At the time of the alleged injury he was doing a thing he had expressly agreed that he would not do.

In Atchison, T. & S. F. R. Co. v. Johnson, 3 Okla. on page 58, the court say:

"But it is contended by plaintiff in error that even if the plaintiff was a passenger, he was guilty of contributory negligence in riding in the box-car. The defendant in error entered the box-car and took his position there of his own choice. In order to entitle himself to the high degree of care which the carrier of passengers must exercise, the passenger must go into, and remain in, the car which is provided for passengers. It has been repeatedly held that if the passenger takes any other position upon the train, of his own choice, either on the engine, on the cow-catcher, tender, baggage car, platform, or other car, he is guilty of such contributory negligence as, if he should be injured, would deprive him of the right to recover, even though the negligence itself might not have been contributed to by the injury [sic]. It has, in some cases, been held that if another place on the train, aside from the car provided for passengers, and which is assumed to increase the danger of travel by rail, has been taken by the passenger by the authority or consent of the conductor or other agent in charge of the vehicle or train, that the carrier may be liable. This doctrine has been upheld by some courts, and denied by others. But it does not apply in cases where the passenger assumes a dangerous and improper place at the instance, and with the consent of, one of the subordinate employes of the carrier company, such as an engineer, fireman, or brakeman of a railway train. Even if the contract of carriage is complete and has been made by the proposed passenger with one authorized to make it on behalf of the company, it is a contract for carriage in the car provided for passengers, if there be one upon the train. The additional danger incident to transportation on freight trains, requires that the passenger should exercise a correspondingly higher degree of care. It has, in fact, been held that the act of riding upon a freight train, in violation of the company's rules, of which the proposed passenger is required to inform himself, if he proposes to make a contract of carriage for himself by that means, is itself such contributory negligence as will preclude the recovery, except for wanton or willful injury. We shall accordingly hold that the defendant in error was, by the act of going into the box-car on the freight train of the defendant at the invitation of the brakeman and without the knowledge of the conductor, guilty of such contributory negligence as would preclude his recovery in this case, and would of itself require that the general verdict should be set aside and that the judgment be reversed. (Carrol v. Interstate Rap. Trans. Co., 107 Mo. 653; Rucker v. Mo. Pac. R. R. Co., 61 Tex. 499; Houston & T. C. R. R Co. v. Clemens, 55 Tex. 88; Penn. R. R. Co. v. Langdon, 1 Am. & Eng. R. R. 92; Kentucky. etc.. R. R Co. v. Thomas, 1 Am. & Eng. R. R. 81; Doggett v. Ill. Cen. R. R Co., 31 Ia. 284; Peoria R. R. Co. v. Lane, 83 Ill. 448; Waterbury v. N. Y. C. & H. R. R. Co, 17 Fed. Rep. 683; Higgins v. Cherokee R. R. Co.. 73 Ga. 139)."

In Bruce v. Chicago, B. & Q. R. Co. (Mo. App.) 116 S. W. 447, it is held:

"A contract allowing the shipper to look after and feed his stock entitled him to enter the car at reasonable times for this purpose, but gave him no right to ride in the same car."

Applying these principles to the case at bar, we cannot, in the light of the evidence, attribute the injury sustained by plaintiff to the negligence of the defendant, but are forced to the conclusion that the same was the result of the carelessness of the plaintiff

in being in the car at the time of the alleged injury, in clear violation of his contract with the defendant company. He knew this car had to be switched into another train, and we are to presume he was aware of the fact that in switching freight car bumps, jolts, and jars were to be expected. There is nothing to show that the defendant knew that the plaintiff was in the car at the time of the alleged injury, and from the mere fact of the injury resulting from the jolt or impact no legitimate inference of negligence on the part of the railroad company could be drawn.

The defendant complains of certain instructions given by the court. In view of our conclusions it is not necessary to pass upon this assignment, further than to say the instructions correctly stated the law, provided there had been any evidence of negligence proven against the defendant to justify sending the case to the jury.

The judgment of the trial court is reversed and cause remanded.

OWEN, C. J., and RAINEY, McNEILL, and BAILEY, JJ., concur.