WILLIAM DeROUSSE, Respondent, v. THOMAS H. WEST, W. C. NIXON, and W. B. BIDDLE, as Receivers of the ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY, a Corporation, Appellant.

St. Louis Court of Appeals.   Opinion Filed January 26, 1918.

1. RAILROADS: Negligence: Crossing Accident: Municipal Corporations: Speed Ordinance. In an action for personal injuries caused by collision, a city ordinance regulating the speed of freight trains, etc., inside the corporate limits and also requiring a watchman to be stationed on the advancing end of locomotives, etc., *held*, the court properly allowed plaintiff to introduce the ordinance.

2. ———: ———: ———: Contributory Negligence: Question for Jury. Evidence *held* to present a question for the jury whether plaintiff driving a wagon should have stopped to listen before attempting to cross the track ahead of a freight train which he could not see, and no warning of its approach having been given.

3. TRIAL PRACTICE: Instructions: Contributory Negligence: Instructions as a Whole. In action for personal injuries caused at a railroad crossing where plaintiff relied on general negligence and the humanitarian doctrine and violation of a freight train speed ordinance, and defendant set up contributory negligence, an instruction on the violation of the ordinance, though it omitted reference to the defense of contributory negligence, was not prejudicial, where other instructions fully covered contributory negligence.

4. ———: ———: Humanitarian Doctrine: Conflicting Theories. An act of negligence which brings the case within the humanitarian rule can be alleged along with other acts of negligence, provided the acts which bring the case under the humanitarian rule and the other acts of negligence alleged, are not inconsistent and self-contradictory.

Appeal from the Circuit Court of Perry County.—*Hon. Peter H. Huck,* Judge.

AFFIRMED.

*W. F. Evans* and *W. J. Orr,* for appellants; *T. B. Whitledge* of counsel.

(1) The two sections of the ordinance read in evidence on the part of plaintiff are unreasonable and oppressive and constitute a burden upon interstate commerce, and deprive defendants of the equal protection of the law, and especially the section requiring a watchman to be stationed on the advancing end of a locomotive of all moving trains. 2 Dillon on Municipal Corporations (5 Ed.), sections 589-592, and the many cases cited from this and other States; St. Louis v. Theatre Company, 202 Mo. 690, 118 U. S. 356. The court judicially knows that defendants' line from St. Louis to Memphis via St. Marys is an interstate line. State v. Railroad, 212 Mo. 658, 111 S. W. 500; McIntosh v. Railroad, 168 S. W. 821;. 15 Ruling Case Law sec. 48. (2) The error committed in admitting these sections of the ordinance in evidence was emphasized by the court refusing to withdraw them from the consideration of the jury after plaintiff elected to submit the case on the humanitarian doctrine alone. Haley v. Railroad, 197 Mo. 25; Grout v. Railroad, 125 Mo. App. 552; Laun v. Railroad, 216 Mo. 563. (3) The court erred in refusing to direct a verdict for the defendants at the close of all of the evidence on part of plaintiff, and again at the close of all of the evidence, because, it clearly appears as a matter of law that plaintiff's own negligence was the proximate cause of the accident. Matz v. Railroad, 217 Mo. 275; Green v. Railroad, 192 Mo. 131; Schmidt v. Railroad, 191 Mo. 228; Laun v. Railroad, 216 Mo. 563; Holland v. Railroad, 210 Mo. 338; Statler v. Railroad, 204 Mo. 619; McGhee v. Railroad, 214 Mo. 530; Burge v. Railroad, 244 Mo. 76; Sanguinette v. Railroad, 196 Mo. 466; Huggart v. Railroad, 134 Mo. 673. (4) Instruction No. 1 given on behalf of plaintiff is clearly erroneous and prejudicial for many reasons, which we will endeavor to point out in our argument. First, it invades the province of the jury; second, it tells the jury defendants were negligent; and, third,

that the evidence shows the accident was so caused. (5) Instruction No. 2 on the part of the plaintiff is erroneous and prejudicial in that it directs a verdict for the plaintiff on the facts hypothecated therein and submits the speed of the train as an element of the humanitarian doctrine. Laun v. Railroad, 216 Mo. 563; Haley v. Railroad, 197 Mo. 15; Grout v. Railroad, 125 Mo. App. 552; Schmidt v. Railroad, 191 Mo. 228; Green v. Railroad, 192 Mo. 131. (6) The plaintiff having testified as a witness in his own behalf, and failing to testify that he assumed that the train would be operated as required by the ordinance, or that he relied upon its observance, the ordinance should not have been submitted to the jury for any purpose. Mackowik v. Railroad, 196 Mo. 570, 94 S. W. 262, and cases cited. (7) Plaintiff admitted that he could not see the train until his mules were on the main line, because of obstructions, and having admitted that he did not stop before going on the track, to enable him to hear, he was guilty of contributory negligence as a matter of law. Underwood v. Railroad, 182 Mo. App. 252, 168 S. W. 803; Masterson v. Railroad, 58 Mo. App. 572; Campbell v. Railroad, 175 Mo. 161, 75 S. W. 86; Hook v. Railroad, 162 Mo. 569, 63 S. W. 360; Kelly v. Railroad, 88 Mo. 534; Dey v. St. Ry. Co., 120 S. W. 134. (8) And plaintiff, having elected to submit his case to the jury on the humanitarian doctrine, admits his own contributory negligence. Matz v. Railroad, 217 Mo. 275, 117 S. W. 591; Boyd v. Railroad, 105 Mo. 371, 16 S. W. 909; Watson v. St. Ry. Co., 133 Mo. 246, 34 S. W. 574; Weller v. Railroad, 120 Mo. 653, 23 S. W. 1061; Nivert v. Railroad, 222 Mo. 626, 135 S. W. 33; Krehmeyer v. Railroad, 220 Mo. 639, 120 S. W. 78; Keele v. Railroad, 258 Mo. 62, 167 S. W. 433; Walker v. Railroad, 193 Mo. 483, 92 S. W. 83; Bennett v. Railroad, 242 Mo. 125, 145 S. W. 433; Burge v. Railroad, 244 Mo. 76, 148 S. W. 925. (9) The violation of the speed ordinance is not an element to be submitted under the humanitarian doctrine, and instruction No. 2 given for plaintiff is erroneous and prejudicial. Haley v. Rail-

road, 197 Mo. 15, 93 S. W. 1123; Laun v. Railroad, 216 Mo. 563, 116 S. W. 553; Grout v. Railroad, 125 Mo. App. 552, 102 S. W. 1026; Green v. Railroad, 192 Mo. 131, 90 S. W. 805; Schmidt v. Railroad, 191 Mo. 228, 90 S. W. 136.

*P. B. Hood* for respondent.

(1) Presumptively, the ordinance is valid and reasonable, and such presumption continues until overthrown by the evidence which clearly shows the contrary; and the burden of proof on the party assailing the ordinance. St. Louis v. Theater Co., 202 Mo. 690; Hisslop v. Joplin, 250 Mo. 588; St. Louis v. Liessing, 190 Mo. 464; 2 Dillon on Municipal Corporations (5 Ed.), sec. 649. An ordinance prohibiting trains from running at a greater rate of speed than six miles per hour, in cities of the fourth class, and in busy parts thereof, has been upheld so many times by the court of Missouri, that it is scarcely necessary to cite cases. Robertson v. Wabash, St. Louis & P. Railroad Co., 84 Mo. 119. The ordinance is not invalid as against interstate commerce. Smith v. Alabama, 124 U. S. 465, 473; 5 Opinions of Attorney General, 554. However, the question of its validity as against interstate commerce, cannot be raised in this case, there being no evidence that it was an interstate train or was carrying interstate matters; and the provision of the ordinance requiring a watchman on the advancing end of the train, was not material in this case (which point will be noticed in the argument) and even if that portion should be void, it does not affect the remainder of the ordinance. (2) If appellant's Point No. 2 stated the correct principle of law, which we do not concede, it would still be inapplicable in this case for the reason that this case was not submitted to the jury on the humanitarian doctrine alone. This will be more fully discussed under Point No. 3 and the argument. (3) Appellant under Point No. 3, cites ten cases to prove respondent was guilty of contributory negligence as a matter of law. There is a great differ-

ence shown by the courts of Missouri, as to what constitutes contributory negligence in the following three cases: (a) In a pedestrian approaching a crossing; (b) a person in a vehicle, with unobstructed view, approaching a crossing; and (c) a person in a vehicle, with obstructed view, approaching a crossing. This case is one under the last class, that is, a vehicle approaching a crossing, with an obstructed view. Not a single case cited by appellant, under his Point No. 3, is that of a vehicle approaching a crossing with an obstructed view. Six out of ten of his cases cited, are pedestrians approaching a crossing, and the other four are vehicles with unobstructed views. The difference in the rules applicable to the three classes of cases is well stated in Jackson v. Railroad, 171 Mo. App. 451, 452; Farris v. Railroad, 151 S. W. 979, 33 Cyc. 1012. The following cases are all applicable to this case in which a vehicle, with obstructed view, approaching a crossing, as our case. Weigman v. Railroad Co., 223 Mo. 699; Donahue v. Railroad Co., 91 Mo. 357; Petty v. Railroad Co., 88 Mo. 306; Johnson v. Railroad Co., 77 Mo. 546; Campbell v. Railroad Co., 175 Mo. 172, 173; Underwood v. Railroad Co., 190 Mo. App. 407; Jackson v. Railroad Co., 171 Mo. App. 451, 453. (4) This case was not submitted to the jury on the humanitarian doctrine alone. Taylor v. Metropolitan St. Ry., 256 Mo. 210, 211; Clark v. Railroad, 242 Mo. 570 and cases cited under No. 3 (see argument). (5) There is no merit to appellant's Point No. 7. Out of the six cases cited by appellant to uphold his Point No. 7, four are not applicable to the case, because they are vehicles with an unobstructed view. And in the two cases of vehicles with obstructed view, to-wit: Kelly v. Railroad Co., the train was making much noise and could have easily been heard by listening. And in Underwood v. Railroad, the doctrine laid out in No. 7 is absolutely contradicted and it is there held not to be contributory negligence as a matter of law, but that it was a question for the jury under the circumstances, quoting: ''As to whether plaintiff was negligent in

not stopping to look and listen, is a question for the jury.'' Underwood v. Railroad, 162 Mo. App. 252. Holding to the same doctrine in cases of vehicles with obstructed view, are the following: Weigman v. Railroad Co., 223 Mo. 699 (cases reviewed); Russell v. Railroad Co., 70 Mo. App. 88; Frank v. Transit Co., 99 Mo. App. 324; Weller v. Railroad Co., 120 Mo. 635; Deshner v. Railroad Co., 200 Mo. 327; Johnson v. Railroad Co., 77 Mo. 546; Kennayde v. Railroad Co., 45 Mo. 255. (6) Plaintiff has a right to plead common-law negligence, statutory negligence and negligence under the humanitarian doctrine, all in one count and if the evidence is such that the court is not justified in declaring the plaintiff guilty of contributory negligence as a matter of law, the plaintiff, in appropriate instructions, may submit the humanitarian doctrine in one instruction, and any other theory of the case plead and proved in another instruction, just so these instructions and theories are not inconsistent. Taylor v. Metropolitan St. Ry., 256 Mo. 210, 211; Clark v. Railroad, 242 Mo. 578. The last case above cited criticises Krehmeyer v. Railroad and Nivert v. Railroad (the only two cases cited by appellant that hold to his doctrine that plaintiff cannot submit to the jury the negligence involved in the humanitarian doctrine, and in another instruction, a different theory of the case), declaring that neither of these cases cited are the opinions of the Supreme Court. Clark v. Railroad, 242 Mo. 596. (7) The verdict, regardless of all error, if any, is for the right party and should be upheld. Rev. Statutes of Mo. 1909, sec. 2082; Schnepbach v. Gas Co., 232 Mo. 603; Sherwood v. Railway, 132 Mo. 339. Peterson v. Transit Co., 199 Mo. 331; Cass County v. T. M. Ins. Co., 188 Mo. 1; Hamilton v. Crowe, 175 Mo. 634, 639; State ex rel. v. Stone, 111 Mo. App. 364; Walker v. Wabash R. R. Co., 193 Mo. 453.

BECKER, J.—In this case the respondent, plaintiff below, recovered a judgment for $5000 for personal

injuries received by him in a collision between one of appellants' locomotives and a wagon in which plaintiff was riding. The defendants in due course bring this appeal.

Plaintiff's petition seeks to recover on the following grounds:

First: The violation of an ordinance of the city of St. Marys, Missouri, limiting the speed of freight trains to six miles per hour.

Second: The violation of an ordinance of the city of St. Marys, requiring a watchman to be stationed on the advancing end of all locomotives, cars and trains, while being operated or run within the corporate limits of said city.

Third: The failure to give the statutory cross-road signals.

Fourth: In addition it is alleged that the plaintiff was in a place of peril and that the employees of defendant saw, or by the exercise of proper care could have seen plaintiff's peril in time to have stopped the train or to have slackened its speed so as to have avoided the collision.

The answer was a general denial and a plea of contributory negligence.

The collision occurred within the corporate limits of the city of St. Marys, Missouri, at the intersection of the main tracks of the defendants' railroad company and Pine Street. The railroad tracks in question ran through St. Marys on the banks of the Mississippi River and at the point in question the tracks consisted of a main line and a side track or switch. These tracks ran parallel with each other and as close together as the safe operation of cars over each track would permit. The tracks run almost east and west, the main track being the nearer of the two to the river. Pine Street, where it intersects the said tracks, runs almost north and south.

Plaintiff was driving a wagon, drawn by a team of gentle mules, north along Pine Street toward the river. The view from Pine Street to the north is obstructed

by buildings along the side of defendants' tracks and
on the day in question the plaintiff's view was further
obstructed by a box car which was standing on the side
track either immediately next to or very near the point
where Pine Street crosses the said railroad tracks, so
that plaintiff could not see down the main line until he
passed the box car which was standing on said side
track. Plaintiff testified that as he drove down Pine Street
and passed the box car on the side track, he glanced
down the track and saw no train and did not hear any,
and, "I glanced up and I never seen or heard none. After
I got just about on the main track I glanced down again
and seen it. I suppose it was between thirty and forty
feet from me. Of course, I may have been a little excit-
ed, and I started to whip my team, and I believe if I had
had a young team I would have made it alright, and the
train hit the wagon and I started to jump but whether
the wagon hit me or the train hit me I could not
say. . . . Q. Was the train, at the time you discover-
ed it, making any noise? A. No, sir."

On cross-examination plaintiff testified that he did
not stop his team before he started across the tracks;
that he looked twice, the first time he looked was just
as soon as he got past the box car, and the second time
was when the mules were on the main track, but whether
the mules, at the moment he saw the engine, had their
forefeet on the track or their entire bodies, he was un-
able to say. The mules were walking at the time at the
rate of three miles per hour.

The plat introduced in evidence below shows that
the west rail of the side track is 6.75 feet from the
corner of the building which stands at the intersection
of Pine Street and said tracks. The said side track has
a width of 4.95 feet and there was a distance between
the side track and the main line of 9.45 feet, the main
line in turn was 4.95 feet in width.

Willis Morrison, a witness for plaintiff, testified
that he was driving a wagon immediately behind the
plaintiff; that the train, which consisted of an engine
and some eight or ten freight cars, came along with the

steam shut off and was not making any noise but was coasting; that he did not hear any bell ringing nor did he hear any whistle; that he saw plaintiff's mules were just on the main track and the train some twenty to thirty feet away when the plaintiff raised up and began to whip the mules in his endeavor to get across the tracks; that, "the train was running along tolerable pert," probably ten miles an hour; he saw the box car on the side track and the end of it was extending half way across the sidewalk of Pine Street. He further stated that the train ran two rails in length after colliding with plaintiff's wagon; which it struck between the front and rear wheels.

Another witness, E. R. Shoults, testified he saw the train going by his home; that his attention was drawn to it by the fact that it did not whistle or ring a bell; that it went by at a speed of about ten to fifteen miles per hour. His home was within three hundred steps of the Pine Street crossing.

Charles Nelson testified that he saw plaintiff just before he got to the switch or side track; that he saw him drive on and that when plaintiff got on the main line he looked down the track; that it was impossible for plaintiff to have seen the engine before that time; that plaintiff then raised up and began whipping his team. Plaintiff jumped when the team was on the main line. The train hit the wagon and ran over plaintiff. Witness did not hear any whistle blown nor did he hear any ringing of the bell. When the collision occurred the witness was sitting down eating his lunch and was within one hundred and fifty feet of the place of the accident. When plaintiff's mules were on the main line the train was about seventy-five to eighty feet away from him and the front wheels of plaintiff's wagon were on the west rail of the main track when plaintiff saw the engine; that the train was coming along at a rapid speed up to within seventy-five to eighty feet of the crossing, and was making some noise up to that point but from there on it was not making any noise and was coasting along; that the speed of the train did not

slacken until it got within three or four feet of plaintiff's wagon; that the train ran about a rail and a half to two rails in length after it struct plaintiff's wagon. He further testified that there was a box car on the side track which was standing four feet from the offset of the building next to the intersection of Pine Street and the railroad crossing; that plaintiff's team was moving between three and four miles an hour. At one time he stated that the train was going three or four times as fast as the wagon, and at another time that the speed of the train was between six and nine miles an hour.

H. H. Sheer testified that the box car was about one foot north of the side walk.

Benj. Lukefhar testified that the end of the box car was near the end of the sidewalk on the side of Pine Street just a little north of the corner; that quite a few townspeople looked at the box car immediately after the accident and he remembered that it was close to the street.

One William P. Smith testified that he had been a locomotive engineer for over twenty years; that a locomotive of the type in question pulling ten freight cars, if they were loaded, and running at a speed of six miles per hour on a dry track could be stopped in about fifteen feet and if the speed was eight miles per hour at twenty-five feet, and if eight to nine miles per hour within thirty feet.

One Robert McAtee testified that he had been a locomotive engineer for over twelve years; that he knew the particular crossing at which plaintiff was injured, having passed over it in an engine approximately 2500 to 3000 times and that he was familiar with the type of engine that collided with plaintiff's wagon; that an engine of that type, in hauling ten loaded cars over this crossing on a dry track, when running at the rate of six miles per hour, could be stopped within fourteen to fifteen feet; running eight miles within seventeen feet; ten miles within twenty-two feet.

L. R. Tucker testified that he saw the train and in his opinion it was running between eight and ten miles and hour; that he did not hear either the bell ringing or any whistle sounded; that he did hear the report of the exhaust of the engine just about the time it started up, which was some 1500 feet or more from the scene of the collision.

James McClain, one of the witnesses for the defendant, testified that he was up at the depot, 1500 feet from the place where the collision occurred, and saw the train start away from the water tank; that he heard the engineer blow the whistle as it left the water tank but that he did not hear them blow the whistle or ring the bell after they had gone from there up to the time they had struck plaintiff's wagon; that the train pulled out pretty fast, "they were headed at a pretty good lick, I heard them say that they had lost an hour's time waiting and they had to get out of there." In answer to the question as to whether the train was puffing or going along without puffing, answered: "They were gliding along pretty smooth." In his opinion the train was going ten to twelve miles an hour.

The engineer in charge of the engine testified that he did not see the plaintiff until he was directed by the fireman to stop; that at the time the fireman called to him the train was moving about six miles an hour; that he immediately made an emergency stop; that the front of the locomotive was perhaps five feet from the wagon when he started to stop; that the coupling between the engine and the tank was standing on the crossing about thirty-five feet after he did stop the train. He was sure that the bell was not ringing as they approached the crossing but that they had blown two short blasts of the whistle at the time they started up from the water tank. As the fireman called to him, and, "when I looked up, the team were on the right hand side with the front wheels and bed of the wagon coming off on the right hand side."

The fireman on the engine testified that as they approached the crossing at Pine Street he had just finished

putting coal into the fire-box and had gotten up into his seat to look out ahead when he saw plaintiff, and a team of mules about twenty feet ahead of the engine. Plaintiff was whipping his mules with the ends of his lines, trying to get across and avoid a collision; that he called to the engineer to stop, which the engineer did, making an emergency stop; that when the engine was brought to a stop it was about sixteen feet beyond the crossing; that the engine was moving at about six miles per hour when the witness first saw the plaintiff; that the engine had been brought to a stop after the engineer, "started to stop, in about twenty feet."

In addition to the testimony set out above the record contains two sections of an ordinance of the city of St. Marys introduced by the plaintiff. One of the sections of the ordinance limits the speed of other than passenger trains, cars, engines or locomotives, within the corporate limits of the city of St. Marys, to not exceed six miles per hour. The other section of the ordinance requires any locomotive, engine, car or train being run through the corporate limits of the city in the daytime, to have a watchman on the advancing end of such locomotive, car or train.

The plaintiff's case was submitted to the jury on the humanitarian doctrine as well as upon the question of the negligence of defendants in the alleged violation of the ordinance limiting the speed of freight trains to not exceed six miles per hour.

The first assignment of error is that the plaintiff was permitted to introduce in evidence the two sections of the ordinance. We have examined the record carefully, as well as the objections made below by the defendants' learned counsel at the time the ordinance was offered in evidence, and we hold the court properly allowed the plaintiff to introduce it.

The next error assigned is that the court erred in refusing to direct a verdict for the defendants at the close of all the evidence on the part of the plaintiff and again at the close of all the evidence in the case,

because the plaintiff, as a matter of law, was guilty of contributory negligence which was the proximate cause of the accident.

In view of the testimony in the case can we hold that plaintiff was guilty of contributory negligence as a matter of law for failing to stop and listen before he started to drive his team across the defendants' tracks? It must be remembered that nearly all the testimony on this point was to the effect that the engine and cars were approaching the crossing making very little noise. As most of the witnesses put it, the engine had the steam shut off and the train was "coasting." In addition it is admitted that the bell was not ringing. With this state of facts before us, can we say as a matter of law that if plaintiff had in point of fact stopped his wagon and listened, he could have heard the approaching train? The facts in this record fall clearly within the rule of law as laid down in the case of Donohue v. Railroad, 91 Mo. 357, where the court held that one attempting to cross railroad tracks at street crossings where the view of the tracks is obstructed, cannot be held guilty of contributory negligence in failing to stop and listen for the train, when it does not appear from the evidence that he could have heard the train had he stopped and listened.

As was said in Kennayde v. Railroad, 45 Mo. 255, l. c. 261: "The citizen who, on a public highway, approaches a railway track, and can neither see nor hear any indications of a moving train, is not chargeable with negligence for assuming that there is no car sufficiently near to make the crossing dangerous."

In the instant case we hold that whether the plaintiff should have stopped to listen before attempting to cross the tracks, was a question for the jury, and an examination of the instruction given by the court for the defendants shows that this question was properly submitted to the jury. [See Jackson v. Railroad, 189 S. W. (Mo.) 381.]

198 M. A.—20

The assignment of error that appellants lay most stress upon is the giving of instruction No. 2 for the plaintiff. This instruction, it is contended by appellants, submitted the case to the jury upon the humanitarian doctrine, and that in said instruction the speed of the train is submitted as an element therein. Learned counsel for appellants is in error. A careful reading of the record convinces us that there was ample testimony offered tending to prove not only the allegations in the petition sufficient to submit to the jury the question of whether the plaintiff was entitled to recover under the humanitarian doctrine, but also to submit the question of the negligence of the defendants as to the alleged violation of the speed ordinance which limited freight trains to six miles per hour. Instruction No. 1, for plaintiff, correctly and fully submitted the question on the humanitarian doctrine. Instruction No. 2 we hold was intended to and did submit to the jury the allegation of the negligence of defendants based upon a violation of the speed ordinance. The said instruction does, however, omit any reference to the defendant's defense that the plaintiff was guilty of contributory negligence, but an instruction given for the defendants specifically and fully sets this out. The instruction at first blush might, if standing alone and read apart from the case by reason of its wording, lead one to believe that it was intended to cover the humanitarian doctrine, but, when read as part of the case and in connection with the other instructions given, it is not open to such construction. As to the omission of any reference therein to the defendants' defense of plaintiff's contributory negligence, we must hold that inasmuch as it was fully covered by defendants' instruction, this omission under the facts in the instant case, was not prejudicial error. As was said in the case of Bettoki v. Northwest Coal & Mining Co., 180 S. W. (Mo. App.) 1021, l. c. 1023: "A further objection to plaintiff's instructions is that they purport to cover the whole case and direct a verdict, but omit defendant's defense

of. contributory negligence. The instructions, standing alone, are subject to this criticism. But they are cured by those given for defendant, which clearly make known to the jury that no verdict should be rendered for plaintiff if he was guilty of negligence. The rule in this State is that if, in the submission of a case by an instruction for plaintiff purporting to cover the whole case and directing a verdict, the defendant's defense of contributory negligence is omitted, it is reversible error, unless defendant covers the omission by instruction of his own, thus presenting a set of instructions, taken as a whole, that clearly submit the whole case. [Owen v. Railroad, 95 Mo. 170, 181, 8 S. W. 350, 6 Am. St. Rep. 39; Lange v. Railroad, 208 Mo. 458, 477, 478, 106 S. W. 660; Anderson v. Railroad, 161 Mo. 411, 427, 428, 61 S. W. 874;. Fugler v. Bothe, 117 Mo. 475, 491, 22 S. W. 1113; Meadows v. Life Ins. Co., 129 Mo. 76, 97, 31 S. W. 578, 50 Am. St. Rep. 427; State ex rel. v. Hope, 102 Mo. 410, 426, 14 S. W. 985;.Patterson v. Evans, 254 Mo. 293, 304-308, 162 S. W. 179; Ellis v. Railroad Co., 234 Mo. 657, 679, 138 S. W. 23; Hughes v. Railroad, 125 Mo. 447, 452, 30 S. W. 127; State v. Tatum, 274 Mo. 357, 373, 175 S. W. 69.] As stated by us in Holman v. City of Macon, 177 S. W. 1078, these authorities have been followed in a great number of decisions by the Courts of Appeals.''

The next point raised by defendants is that in submitting his case to the jury upon the humanitarian doctrine plaintiff thereby admits his own contributory negligence and is therefore barred from submitting any other theory, for his recovery, to the jury, even though such other act of negligence be pleaded in plaintiff's petition, and that on the ground that such other alleged acts of negligence are inconsistent with such humanitarian doctrine.

It is no longer open to argument but that the plaintiff has a right to plead all negligent acts whether common law or statutory all in one count, and that an act of negligence which brings the case within the humanitarian rule can be alleged along with other acts of negli-

gence, provided the acts which bring the case under the humanitarian rule and the other acts of negligence alleged are not inconsistent and self-contradictory. In the case before us the acts alleged as bringing the case under the humanitarian rule and the other act of negligence which is the alleged violation of the speed ordinance, are not inconsistent and the plaintiff having adduced proof sufficient to take either assignment to the jury, was properly permitted to have both submitted to the jury under proper instructions.

We have examined the several assignments of error made by appellants and find no prejudicial error, and the judgment, being for the right party, is accordingly affirmed. *Reynolds, P. J.,* and *Allen, J.,* concur.