## ARTHUR C. HEIGOLD v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

### Division One, April 13, 1925.

1. **APPELLATE PRACTICE: Unassigned Errors: Demurrer: Negligence.** Where appellant assigns certain errors, the appellate court does not consider other unassigned questions. If the only assignments are that respondent was guilty of contributory negligence, that it was error to give certain instructions and that the verdict is excessive, the court will not review the evidence for the purpose of determining whether it is sufficient to support a verdict for respondent or whether appellant was guilty of negligence.

2. **NEGLIGENCE: Vigilant Watch: More Than Ordinary Care.** The Vigilant-Watch Ordinance of the city of St. Louis places upon a street railway a greater degree of care than the mere ordinary care prescribed by the common law—even a greater degree of care (in some places) than is prescribed by the humanitarian rule. It requires the motorman to be' prepared to stop his car at the first

Heigold v. United Railways Company.

appearance of danger to persons and vehicles within or entering the danger zone; it requires him to be prepared to stop his car at the first appearance of such danger, within the shortest time and space possible; and these requirements place upon the motorman the duty to anticipate that persons approaching the track will come within the danger zone and that those within the danger zone will not seasonably leave it.

3. ———: ———: Contributory Negligence as Defense. Contributory negligence is a good defense to a cause of action based on a violation of the Vigilant-Watch Ordinance of St. Louis. Ordinance negligence is primary negligence, and contributory negligence has always been a good defense to primary negligence. [Distinguishing Gubernick v. United Railways Co., 217 S. W. 33.]

4. ———: ———: ———: Matter of Law or Question for Jury: Street Car: Increasing Speed at Regular Stopping Place. Contributory negligence is an affirmative defense, and a question for the jury to determine where the facts do not, under the circumstances, unequivocally establish it. Where the Vigilant-Watch Ordinance, upon whose violation plaintiff's case is based, required the motorman, upon the first appearance of danger to pedestrians on the track or moving towards it, to stop the street car in the shortest time and space possible, evidence that, as plaintiff approached the track from the west, for the purpose of taking a north-bound car, a south-bound car, from one hundred to two hundred feet north of the regular stopping place, instead of stopping at said regular stopping place, where others were waiting to board it, increased its speed to twenty-five miles per hour, and struck him as he was going in a southeasterly direction to the regular stopping place of north-bound cars, and struck him when one or two steps more would have placed him in the clear, shows that the motorman was not keeping the vigilant watch required by the ordinance, and that the negligence of the plaintiff was a question for the jury. Plaintiff had the right to assume that the south-bound car would stop to take on passengers awaiting it at the regular stopping place, and certainly that its speed would not be increased, and the evidence shows that had the speed not been increased he would have reached a place of safety.

5. ———: ———: Instruction for Ordinary Care. In an action based on a violation of the Vigilant-Watch Ordinance defendant is not entitled to an instruction telling the jury that the motorman of the street car, which struck plaintiff as he was in the act of crossing the track, "was not under any duty to begin stopping his car until he saw, or could, by the exercise of ordinary care, have seen, the plaintiff was in fact going to attempt to so cross."

6. ———: ———: **Instruction for Contributory Negligence.** If neither the instructions given for plaintiff nor those asked by defendant contained any expressed or implied reference to contributory negligence, then the question of plaintiff's negligence is not for consideration on appeal, where defendant has failed to assign or urge that plaintiff's evidence is insufficient to support a verdict. In such situation both parties are held to have submitted the case to the jury upon the theory that contributory negligence was not a legitimate defense.

7. ———: **Instruction for Plaintiff: Omission of Defense of Contributory Negligence.** An instruction for plaintiff authorizing a verdict for him if the jury find the stated necessary elements of his cause of action, is not erroneous because it omits defendant's pleaded affirmative defense of contributory negligence, if an instruction asked by defendant including such defense is given.

8. **EXCESSIVE VERDICT: $15,300.** Plaintiff was forty-nine years of age at the time of his injury and fifty-five at the time of the trial. Previous to his injury he had earned eighty-five dollars per month, and at the time of the trial not exceeding forty, although wages had materially advanced. Struck by a street car, his skull was fractured at its base; there has since been incoordination of the muscles, so that if, trying to stand straight, he shuts his eyes, he immediately falls, and he shuffles and falters in his walk; one leg is practically useless; he has suffered with dizziness and loss of sleep since the injury, and his impaired condition is permanent. *Held*, that a verdict for $15,300 is not excessive.

Citations to Headnotes: Headnote 1: **Appeal and Error,** 3 C. J. sec. 1462. Headnote 2: **Street Railroads,** 33 Cyc. p. 1472. Headnote 3: Street Railroads, 36 Cyc. p. 1525. Headnote 4: **Street Railroads,** 36 Cyc. p. 1628. Headnote 5: **Street Railroads,** 36 Cyc. p. 1648. Headnote 7: Street Railroads, 36 Cyc. p. 1645. Headnote 8: **Damages,** 17 C. J. sec. 410.

Appeal from St. Louis City Circuit Court.—*Hon. Charles B. Davis,* Judge.

AFFIRMED.

*T. E. Francis* and *John F. Evans* for appellant.

(1) Instruction 1 is erroneous (a) Plaintiff was guilty of contributory negligence as a matter of law which would bar recovery on the theory set out in the instruction, namely, failure to observe the provisions of the Vigilant-Watch Ordinance. Gubernick v. United Rys. Co., 217 S. W. 33; Pinkard v. Wells, 249 S. W. 426; Fagan v. Wells, 261 S. W. 686. The action of plaintiff in going

upon the tracks in front of the approaching car was negligence. McCreery v. Rys., 221 Mo. 18; Huggart v. Railroad, 134 Mo. 673; Cole v. Ry. Co., 121 Mo. App. 605; State ex rel. v. Reynolds, 233 S. W. 219; Evans v. Railroad, 289 Mo. 493; Kelsay v. Railroad, 129 Mo. 362; Gumm v. Railroad, 141 Mo. App. 306. Plaintiff could not rely upon the presumption that the car would stop for passengers. McMiens v. Railways, 274 Mo. 326. He could not rely upon obedience to the law by defendant, to the extent of failing to use his senses for his own protection. Keele v. Railroad, 258 Mo. 62; Paul v. Railways, 152 Mo. App. 577. (b) The instruction ignored the defense of contributory negligence pleaded in the answer. Quinn v. Van Raalte, 276 Mo. 100; State v. Hilton, 234 Mo. 559; Enloe v. American Car Co., 240 Mo. 443; State v. Stubblefield, 239 Mo. 526; Alexander v. Railways, 231 S. W. 66; Riegel v. Biscuit Co., 169 Mo. App. 515; Hall v. Coal & Coke Co., 260 Mo. 369. (2) The court erred in refusing to sustain defendant's motion for new trial on the ground that the verdict is excessive. Holzemer v. Met. St. Ry. Co., 261 Mo. 379, 169 S. W. 102; Parks v. U. R. Co., 235 S. W. 1067; Gilchrist v. Rys. Co., 254 S. W. 161; Kiefer v. City, 243 S. W. 104; Crockett v. Rys. Co., 243 S. W. 104; Simon v. Brass Mfg. Co., 250 S. W. 74.

*Mark D. Eagleton* for respondent.

(1) Plaintiff was entitled to recover under the Vigilant-Watch Ordinance. Lackey v. United Rys. Co., 231 S. W. 961; Mason v. United Rys. Co., 246 S. W. 323; State ex rel. Vogt v. Reynolds, 244 S. W. 929. (2) The only defense relied upon by the defendant was that the plaintiff had stepped immediately in front of the street car and so close thereto as to cause the collision. This defense was set up in the answer and submitted in the only instruction requested by the defendant. It was not necessary for the plaintiff to negative such defense in his instruction. State ex rel. Jenkins v. Trimble, 236 S. W. 651; Jackman v. Ry. Co., 231 S. W. 978; Varley v. Taxicab Co., 240 S. W. 218.

308 Mo. Sup.—10.

GRAVES, J.—Action for personal injuries. Plaintiff was a pedestrian crossing Union Avenue in the city of St. Louis, when he was struck by one of defendant's street cars, at the time operated upon and over such avenue. The date of injury is fixed as of December 6, 1916. The acts of negligence pleaded in the amended petition upon which the cause was tried are as follows:

"That plaintiff was struck by defendant's said street car and injured on account of, and as the direct result of, the negligence and carelessness of defendant, its agents and servants as follows, to-wit, that, on said occasion, the defendant, its agents and servants, negligently and carelessly ran and operated said street car at a high and dangerous rate of speed, to-wit, more than twenty miles and hour; negligently and carelessly failed and omitted to sound a bell or give other warning of the approach of said car; negligently and carelessly failed and omitted to exercise ordinary care to slacken the speed of, or stop, said car after defendant saw, or, by the exercise of ordinary care on its part would have seen plaintiff in a position of peril, in time, by the exercise of ordinary care and with safety to the passengers and other persons on said street car, to have stopped said street car, or slackened the speed thereof, and avoided injuring plaintiff.

"Plaintiff further states that on or about said 6th day of December, 1916, there was in force within the city of St. Louis, Missouri, an ordinance of said city by which it was provided that motormen and conductors in charge of street-railway cars should keep vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles such cars should be stopped within the shortest time and space possible, and plaintiff avers that at, and before the time that said street car struck and injured plaintiff, as aforesaid, the motorman and conductor in charge of said street car negligently and carelessly failed and omitted to keep such vigilant watch, and on the first appearance of dan-

ger to plaintiff failed and neglected to stop said car in the shortest time and space possible with safety to the passengers and other persons on said street car.

"Plaintiff further states that at said time there was in full force and effect an ordinance which provided, in effect, that every motorman, gripman or other person in charge of said car, while operating any such car, should bring the same to a full stop at a regular crossing or appropriate place designated for reception of passengers, whenever such motorman should have been signaled by any such person desiring to board such car, and plaintiff states that the defendant at the time and place aforesaid did negligently fail and refuse to bring its car to a full stop after it had been signaled by passengers who were waiting to board said car at said intersection and at a place there designated for such stop, and where defendant had for a long period of time theretofore customarily and habitually stopped for such purpose, upon all of which plaintiff upon said occasion relied, expecting said car to stop, and defendant did negligently cause, suffer and permit its said car to be run into the plaintiff after having passed said intersection."

The amended answer, filed December 6, 1922, is (1) a general denial and (2) pleas of contributory negligence. Reply was a general denial. Plaintiff upon a conclusion of the trial had a verdict for $15,300. From a judgment upon such verdict the defendant has appealed.

For the plaintiff, the cause was submitted to the jury upon the following principal instruction:

"The court instructs the jury that if you find and believe from the evidence that on the 6th day of December, 1916, the defendant was engaged in the business of owning and operating street cars as a carrier of passengers for hire, in the city of St. Louis, Missouri; and if you find that it then owned and operated a line of street railway known as the Union Avenue Line, along Union Avenue, in the city of St. Louis; and if you find that said Union Avenue was an open, public street and highway in the city of St. Louis; and if you find that on December 6,  .

1916, defendant maintained a street-car track in said street and operated street cars upon and along said track; and if you further find and believe from the evidence that on said 6th day of December, 1916, the plaintiff was traveling on foot upon said Union Avenue, and either on or moving towards defendant's said street car track there (if you do so find), and that one of defendant's said Union Avenue Line street cars was then and there operated by defendant along said track toward the plaintiff, and if you find and believe from the evidence that defendant's motorman in charge of and operating said street car (if you do so find) by keeping a vigilant watch for persons moving towards or upon the defendant's said track would and could have seen the plaintiff upon or moving toward said track and in danger of being struck by said street car (if you find plaintiff was in such danger), and that thereafter, by stopping said car within the shortest time and space possible under the circumstances, with due regard for the safety of the street car and the passengers thereon, would and could have avoided colliding with plaintiff, and if you find that he failed and neglected to do so; and if you find that said car did then and there collide with and injure the plaintiff; and if you find that said collision, if any, and plaintiff's injuries, if any, directly and proximately resulted from the failure of defendant's motorman to keep such vigilant watch (if you find that he did fail to do so), or failure to stop said car in the aforesaid time and space and under the aforesaid circumstances (if you find that he did so fail), then your verdict must be in favor of plaintiff and against the defendant.''.

Counsel for appellant have made assignments of error covering only two questions, as follows:

''1. Said court erred for the reasons set out in Point I of Points and Authorities in giving and reading to the jury Instruction No. 1 on behalf of plaintiff.

''2. Said court erred for the reasons set out in Point II of Points and Authorities in failing and refusing to set the verdict aside on the ground that it is excessive.'

The questions for discussion fall into a small compass, by reason of the assignments of error, supra. The facts will be taken in connection with the two points urged.

I. The record shows that at the close of plaintiff's case the defendant asked an instruction in the form of a demurrer to plaintiff's evidence, which was overruled, and defendant excepted to the action of the court. Such an instruction was not renewed at the close of the whole case, and the refusal of the one at the close of plaintiff's case is not assigned as error, in the assignments of error. As shown in our statement there are but two assignments of error, which we have quoted in full. From it all it is apparent that defendant has abandoned the idea that plaintiff made no case for the jury, if in fact it ever seriously considered that such was the case. In view of the assignments of error (which are the sole questions for our consideration) we do not have the sufficiency of proof to make a case for the jury before us on this appeal.

*Unassigned Questions.*

Defendant in its assignment of errors does not urge the question, and it is not for the court to urge such question for defendant. The first assignment of error is peculiar, in that it refers to the first point of "Points and Authorities" for the specifications, and this point only urges the contributory negligence of the plaintiff. So going to all the matters urged by assignment numbered 1, the defendant is not now insisting that the defendant was not guilty of negligence at the time and place of the accident. At least that particular question is out of the consideration now.

II. A careful reading of instruction numbered 1 given for the plaintiff shows that this case was submitted to the jury under the Vigilant-Watch Ordinance of the city of St. Louis. Under its point one the defendant urges that this instruction was erroneous. First, it is said that plaintiff was guilty

*Vigilant Watch.*

of contributory negligence as a matter of law, and this in the face of the fact that defendant has abandoned here its demurrer to the evidence, as pointed out previously. After much division of opinion, and long consideration, this court finally reached the conclusion that the Vigilant-Watch Ordinance placed upon a street railway a greater degree of care, than mere ordinary care prescribed at common law. Not only so, but a greater degree of care (in some places) than imposed by the humanitarian rule. [State ex rel. Vogt v. Reynolds, 295 Mo. 375, 244 S. W. l. c. 932.] Among other things at page 388 of the Vogt opinion, we said:

"Vigilant watch contemplates a sort of eager, sustained attention. 'Vigilant' is defined by Webster's New International Dictionary as 'alertly watchful as one keeping vigil.' Applying this definition, 'vigilant watch,' means a watchful watch, an attentive watch. Common-law care would permit the motorman on less used streets to relax somewhat and to assume that people and vehicles will stop before actually reaching and entering the danger zone; or if already within such zone, that they will leave it in good time. The Vigilant-Watch Ordinance requires the motorman to be prepared to stop his car at the first appearance of danger, within the shortest time and space possible. *It requires the motorman to anticipate that those approaching the track will come within the danger zone and that those within it will not seasonably leave it.* Under the common law the motorman could assume that no such intention exists in the mind of the person approaching, until the contrary appears. If he is already on the track, the motorman is permitted to assume that he will in due time get off of it upon timely signal, and no duty to stop the car to check its speed rests upon the motorman until it is reasonably apparent that such assumption cannot be safely relied upon. [36 Cyc. 1517; Bunyan v. Citizens' Ry. Co., 127 Mo. 12, l. c. 17, 29 S. W. 842; Petty v. St. Louis Ry. Co., 179 Mo. 666, l. c. 676, 78 S. W. 1003; Boyd v. Ry. Co., 105 Mo. 371, l. c. 381, 16 S. W. 909; Eckhard v. Transit Co., 190 Mo. 593, l.

c. foot note 618, 89 S. W. 602; Ross v. Street Railway Co., 113 Mo. App. 600, l. c. 606, 88 S. W. 144.]

"The foregoing considerations persuade us that the Vigilant-Watch Ordinance requires more than common-law care requires. In stating that the ordinance is merely declaratory of the common law, the Sluder case was in error and on that point must be overruled."

The italics are ours. This short italicized sentence leaves no doubt as to this court's views on the subject. At the expense of brevity we re-quote: "*It requires the motorman to anticipate that those approaching the track will come within the danger zone and that those within it will not necessarily leave it.*" This precludes the idea that the motorman can run heedlessly along, and depend upon the traveler to stop before reaching the actual point where he would come in contact with the car. So much for this side of the case.

Defendant urges the case of Gubernick v. United Railways Co., 217 S. W. 33. In that case we announced the doctrine that contributory negligence was a good defense against statutory or ordinance negligence. This was not new thought of the writer of that opinion. Ordinance negligence is primary negligence, and contributory negligence has always been a good defense. The negligence involved in the so-called humanitarian rule is not primary negligence. That rule proceeds in utter disregard of both primary negligence, and contributory negligence. Under that rule the operator of a car may be guilty of primary negligence, and the traveler be guilty of contributory negligence, and yet there may be a recovery for an injury to the traveler. This for the reason, that although the operator of a car may be guilty of negligence, yet if such operator sees, or at public crossings where the law attributes seeing whether he sees or not, and such operator could then save the traveler (although he is guilty of negligence) then a duty arises, out of the very instincts of humanity, to save the life, or the body from injury, if it can then be done in the exercise of ordi-

Contributory
Negligence
as Defense.

nary care. We adhere to the rule in both the Vogt case, and the Gubernick case. The former mentions the latter with approval. So in this case we shall proceed as if both cases shall stand. They are not in conflict, but in accord. In the instant case the plaintiff has elected to stand upon the Vigilant-Watch Ordinance, rather than the humanitarian rule. In such case contributory negligence would bar a recovery. The case really turns upon this question, and of that in the succeeding paragraphs.

III. Was plaintiff guilty of negligence, contributing to his injury, when he attempted to cross the railway tracks? The answer must be sought from the facts. The accident was on Union Avenue in the city of St. Louis. On that avenue (which runs practically north and south) defendant had double-railway tracks. North-bound cars used the eastermost tracks, and south-bound cars used the westermost tracks. Plaintiff and one Joseph Carey both worked for the Polar Wave Ice & Fuel Company. After their work was over they proceeded together to catch cars on Union Avenue to reach their homes. Plaintiff desired to catch a north-bound car, which would be on the eastermost tracks. Carey desired to take a south-bound car which would be on the westermost tracks. At the point of injury the tracks of defendant were upon a viaduct. The two parties reached the viaduct at a point about twenty-five feet from the stopping place for south-bound cars. When they got within a few feet of the westermost tracks (coming from the west) a south-bound car was seen approaching from the north at a distance of 175 to 200 feet to the north, and running at a speed of fifteen to twenty miles per hour according to some of the evidence, although plaintiff did not know its speed. Carey remarked, "There comes my car," and started to the stopping place some twenty-five feet north, and left plaintiff a few feet from the westermost tracks upon which his car was approaching. Carey waived the car to stop, as he says. He reached the regular stopping place in time

*Contributory Negligence.*

to get on the car had it stopped.   There was the usual
sign for a stopping place at the point where he and other
passengers were.   Although there were passengers await-
ing this car, at this regular stopping place, instead of
stopping, according to Carey, it ran on and increased its
speed to twenty-five miles per hour.   At this season it
was getting dark at 6:15 o'clock in the evening, but elec-
tric lights were burning, and persons could be seen at
least from 100 to 200 feet.   The plaintiff, knowing that
there was a regular stopping place twenty-five feet to
the north of him; and knowing that Carey and others
were to board this car; and knowing that Carey left him
waiving a stop signal to the approaching car, started
across the tracks in a southeasterly direction to reach the
stopping place of his car, then in the distance, approach-
ing from the south.   Had he walked straight across from
the west to the east, he would have made it, notwithstand-
ing the increased speed of the car.   But, as said, he
walked in a southeasternly direction, and was caught by
the fast moving car, when only one or two steps would
have put him in the clear.   There is evidence tending to
show that there were no passengers standing in this car,
but that all were seated; that such car with such a load
could have been stopped within sixty feet if running at
twenty miles per hour, and within eighty-five feet if run-
ning twenty-five miles per hour.   These facts tend to
show (1) that the motorman was not keeping that vigi-
lant watch demanded by the ordinance, and (2) that the
negligence of the plaintiff was a question for the jury.
This plaintiff had the right to assume that the car would
stop to pick up the passengers awaiting it at a regular
stopping place.   He had no right to think that the speed
would be increased, to say the least.   Without the in-
crease of the speed, he would have reached a point of
safety.   The fact of an increase of the speed would show
that the motorman was not looking ahead for one on
or approaching his track, because a man could have been
seen under the electric lights there.   The plaintiff was
not shown to be guilty of negligence as a matter of law.

His negligence, if any (an affirmative defense), was a question for the jury, to say the least. The facts of this case do not make applicable the case of McMiens v. United Railways, 274 Mo. 326. The contention that plaintiff was guilty of contributory negligence as a matter of law cannot be sustained.

IV.   We have discussed generally the matter of contributory negligence, and said that the least that could be done was to have submitted that question to the jury.

Contributory
Negligence:
Instructions.

But the defendant urges that instruction numbered 1, supra, is faulty because it does not submit to the jury the question of pleaded contributory negligence. The only instructions asked by defendant so far as this record shows, are as follows:

"The court instructs you that the motorman had a right to presume that the plaintiff would not attempt to cross the track in question immediately in front of his car, and he was not under any duty to begin stopping his car until he saw, or could, by the exercise of ordinary care have seen, the plaintiff was in fact going to attempt to so cross."

"The court instructs you that if you find from the evidence that plaintiff at the time and place mentioned in the evidence stepped on the track immediately in front of the car in question and so close thereto as to render a collision between him and the car unavoidable on the part of the motorman, by the exercise of ordinary care, with the means and appliances at hand, then your verdict must be for the defendant."

These were both given, but under the Vogt case, supra, the first is a clear error in favor of defendant. Note the phrase "by the exercise of ordinary care" used therein. The second one, supra, numbered 4, says nothing about contributory negligence, in specific words, but it covers an act of negligence on the part of plaintiff. This instruction comes nearer covering the idea of suicide than that of contributory negligence, but an act of

suicide might be an act of negligence. But even if it be construed (as we shall construe it) as an instruction upon contributory negligence, we reach then the point, whether or not the two instructions do not cover the law of the case, and if so, whether or not the plaintiff was in default in not submitting such question to the jury in his instruction numbered 1.

If this instruction numbered 4 be not considered as defendant's instruction upon contributory negligence, then it has abandoned that question, for the reason that it has failed, as stated before, to urge a demurrer to the evidence.  We might further add, that, if this is not an instruction upon plaintiff's alleged contributory negligence, then both parties proceeded in the submission of this case to the jury upon the theory that contributory negligence was not a legitimate defense to an action under the Vigilant-Watch-Ordinance, and having so proceeded are bound here by the course of trial, *nisi*.

We think, however, that Instruction No. 4 covers defendant's theory of the alleged contributory negligence upon the part of the plaintiff. Viewing it in that light, the omission of the matter of contributory neglience in plaintiff's instruction. is not error, because such is submitted by defendant. There has been a sharp conflict among our judges, as to whether or not, a plaintiff, in an instruction covering the whole case, should not include the matter of contributory negligence, when pleaded as a defense.  The heresy, if there be heresy, was injected into the law in Sullivan v. Ry. Co., 88 Mo. 1. c. 182. That case, in effect, ruled that if an instruction for plaintiff, purporting to cover the whole case, and directing a verdict for plaintiff, omitted to include the defense of contributory negligence, then the instruction was error, and that the vice could not be cured by other instructions given for defendant, putting before the jury the question of contributory negligence.  This case did not long stand. It was shortly overruled in an opinion by BLACK, J., in Owen v. Ry. Co., 95 Mo. 1. c. 181, whereat he said:

"The final objection to these two instructions is, that they ignore the defense of contributory negligence, because they do not conclude with some such words as, 'provided the plaintiff was not negligent.' On this defense the court gave a number of instructions, one of which is as follows:

" 'If the jury believe from the evidence, that plaintiff recklessly or negligently attempted to alight, or jump from the train, and the brakeman either tried to keep her from so doing, or to assist her to alight after she voluntarily attempted to do so, and that he tried to keep her from getting off, then the jury will find for defendant, no matter what her injuries may have been, or what her condition now is.'

"To say, with these instructions, that the jury could find for plaintiff, without regard to negligence on her part, is little short of charging them with corruption. *The instructions are to be taken as a whole, are so taken by men of common understanding, and can be understood in no other way.* There is no necessity for qualifying each by an express reference to the others. They thus qualify themselves, when in the form these instructions are. The contrary ruling in Sullivan v. Railroad, 88 Mo. 182, is not to be followed."

This ruling of Judge BLACK established the rule, that if the instructions taken as a whole (those for plaintiff and those for defendant) properly submit the question of contributory negligence, then the failure of the plaintiff, in his instruction, to negative contributory negligence, is not error for which a judgment in his behalf should be reversed. The question is not fully briefed upon either side in this case. Appellant has seized upon isolated sentences in a few cases for its contention. Respondent does not brief the question, but it is of too much importance to pass without full review.

We have searched our reports, and have before us now some thirty-six cases, following the ruling of BLACK, J., in the Owens case, supra. They come from this court and the courts of appeals. TRIMBLE, J., in Hoagland v. Kansas City Railways, 209 S. W. l. c. 572, says:

"Where plaintiff's instruction omits some featur<sup></sup> which is not an element of his cause of action, but is merely a defensive feature, the omission may be cured by the instructions for defendant submitting that feature. [Owens v. Kansas City Ry. Co., 95 Mo. 169, 8 S. W. 350, 6 Am. St. Rep. 39; Wingfield v. Wabash Ry. Co., 257 Mo. 347, 361, 363, 166 S. W. 1037; Lange v. Missouri Pacific Ry. Co., 208 Mo. 458, 477, 106 S. W. 660; Barnard v. Waverly Brick & Coal Co., 189 Mo. App. 419, 423, 176 S. W. 1108.] But where the omission is a necessary element or a principal feature of plaintiff's case, then the inclusion thereof in defendant's instructions cannot cure it. [Hall v. Manfg. Coal & Coke Co., 260 Mo. 351, 368, 369, 168 S. W. 927, Ann. Cas. 1916 C, 375; Dameron v. Hamilton, 264 Mo. 103, 116, 174 S. W. 425; Cooney v. Pryor, 203 S. W. 630.]"

The Wingfield case cited, supra, is one of our productions.

So too this court, per RAILEY, C., in the recent case of Colburn v. Krenning, 220 S. W. l. c. 940, says:

"The principle of law relating to above subject, has been thoroughly considered in personal injury cases, where contributory negligence is asserted as an affirmative defense. We have uniformly held in a personal injury case, if plaintiff's instruction is good, aside from the question of contributory negligence, and defendant is given an instruction properly declaring the law with respect to contributory negligence, the two instructions thus given will be sufficient. [Owens v. K. C., St. J. & C. B. Ry. Co., 95 Mo. 169, 181, 8 S. W. 350, 6 Am. St. Rep. 39; Lange v. Mo. Pac. Ry. Co., 208 Mo. 458, 478, 106 S. W. 660; Meily v. Railroad, 215 Mo. 567, 587, 588, 114 S. W. 1013; Wingfield v. Railroad, 257 Mo. 347, 375, et seq., 166 S. W. 1037; Williams v. Gas & Electric Co., 274 Mo. 1, 14, 202 S. W. 1; Hoagland v. Kansas City Rys. Co., 209 S. W. 569, 572; White v. Lee, 204 S. W. 936, 937; Lawbaugh v. McDonald Mining Co., 202 S. W. 617, 619; De Rousse v. West, 198 Mo. App. 293, 200 S. W. 783, 786; May v. Avansino, 185 S. W. 1178, 1180; Bettoki v. N. W.

Coal & Mining Co., 180 S. W. 1021, 1023; Johnson v. Traction Co., 176 Mo. App. 174, 185, 186, 187, 161 S. W. 1193.] The authorities are so conclusive, in respect to above assignment, that we do not deem it necessary to quote from same.''

To like effect are Daniel v. Pryor, 227 S. W. l. c. 106; Williams v. Springfield Gas & Electric Co., 202 S. W. l. c. 4; Stack v. General Baking Co., 223 S. W. l. c. 98; State ex rel. v. Trimble, 236 S. W. l. c. 653; Scott v. McLennan, 242 S. W. l. c. 142 et seq.

Of course, if an instruction for plaintiff, which purports to cover the whole case, and directs a verdict for plaintiff, omits some element requisite to the right of plaintiff to recover, then such omission cannot be cured by a proper instruction for defendant covering all elements of plaintiff's case, because the instructions would conflict. [State ex rel. Long v. Ellison, 272 Mo. l. c. 583.] This rule has no application to an affirmative defense, as is contributory negligence. If the plaintiff's instruction fails to cover contributory negligence, but defendant gets an instruction upon the question, then the latter cures the trouble, because the instructions considered as a whole properly cover the case. In the instant case, the instruction of defendant on contributory negligence is as fully explicit, as is the one in Owens case, supra. From it all it must be ruled that plaintiff's instruction numbered 1, when taken with defendant's Instruction No. 4 covers the law of the case, and defendant's criticism of such instruction cannot be sustained.

V. The remaining assignment of errors covers the alleged excessiveness of the verdict. The verdict was for $15,300. Plaintiff was a strong, healthy man, forty-nine
**Excessive**
**Verdict.**
years of age at the time of the injury in 1916. He was earning $85 per month. He was fifty-five years old at the date of the trial below. There were six years in which to determine the extent of his injuries. He received a fracture at the base of the skull, and was unconscious for eleven days there-

after.   His earnings since have been irregular and in amount not to exceed $10 per week, a loss of $45 per month.   This, too when all wages have advenced much since 1916, at which time he had steady employment at $85 per month.   His attending physician speaking of him in 1917, says:

"Q.   Now, after this time how long did you continue to treat him after that time?   A.   Until June, 1917.

"Q.   During that time did you have occasion to observe the manner in which he got around; he was able to maintain himself so far as equilibrium was concerned? A.   Yes, sir.

"Q.   What was the fact, with reference to that? A.   He was very faulty and uncertain in his action and very like he was ready to topple over every step he took. Sort of shuffled along."

He further said of his later observation of plaintiff as follows:

"Q.   Doctor, with reference to his present gait, and at any time since you have seen him since April, 1917, what is the fact, with reference to how he gets around? A.   I don't think there is a great deal of improvement."

Dr. Kinder, an expert, examined this man in 1922— six years after the injury—and among other things said that he gave him the Romberg test, and of this test says:

"Q.   When you speak of making examinations of the reflexes, tell us what the reflexes are and the purpose of making the examination of the reflexes and what this particular test of the closing of the eyes is?   A.   Well, having the patient stand with the feet together, body erect, with the head slightly thrown back, with the eyes closed, is one of the tests known as the station test.   It is also known by the name of the discoverer of this test, Romberg.   It is spoken of as the Romberg test, and that is a test to ascertain one's ability to stand with the eyes closed, or station test.

"Q.   In his particular case, what would happen when you would make that test?   A.   He wasn't able to balance himself at all.   He would fall immediately.   I had

to permit him to use his cane even in making the test. As I stated, he had one crippled leg anyway, and that necessarily made the test very difficult to judge. And his ability to find objects with his fingers with his eyes closed was very poor. It shows his muscle co-ordination was bad.

"Q. With reference to the functional use of the right leg, independent of any other fact, what would you say with reference to that condition? A. Well, the use of that limb, of the right leg, is greatly impaired. He has lost function in the right leg, in that he can't use it as a normal limb can be and should be used.

"Q. To what extent, would you say, there has been a loss of function, what percentage? A. I would say at least fifty per cent.

"Q. Doctor, I will ask you to assume that your findings were as you have stated, and that on the 6th day of December, 1916, in a street car collision he sustained what has been described as a fracture of the base of the skull, indicated by hemorrhage from one of the ears and the emission of some spinal fluid from the nose, and also blood clot from a puncture of the lumbar spinal test, and that thereafter for eleven days while lying in the hospital, he was highly delirious and unconscious, and further, that since coming out of the hospital and attempting to walk, he hasn't the function of that leg, as you have described, I will ask you whether that is one of the things that could ordinarily come from an injury such as I have described? A. Such conditions could flow from an injury or fracture to the skull.

"Q. Now, I want you to assume since the date of his injury, that he has been unable to walk without the aid of a cane, and that when you make tests to determine whether or not he can stand or maintain his equilibrium under circumstances you have described, that he fell, and that under actual observation his step has been faltering and shuffling as if indicating he was going to fall while attempting to walk, and that that has continued up to the present time, I will ask you whether or

not, in your opinion, these symptoms and to the same extent are reasonably certain to be permanent.   A.   In my opinion, they are of a permanent character; yes, sir.

"Q.   And doctor, assuming that they have existed over a period I have described, December 6, 1916, to the present time, which is over six years, I will ask you what is the fact as to whether or not any improvement can be expected?   A.   In my judgment, there will be no improvement.

"Q.   Does an injury of that kind, particularly an injury to the skull, and the nerves and the like in that region, cause pain?   A.   Yes, sir; a fractured skull causes pain.

"Q.   Is dizziness also one of the symptoms of a fractured skull?   A.   It is very frequently associated with a fractured skull, dizziness."

This man suffered from dizziness and loss of sleep all the years prior to the trial.   This in addition to only a fifty per cent use of his leg, makes his case more than an ordinary one.

We cannot say upon the facts submitted that the verdict is excessive.   His loss of earnings from age forty-nine must be considered.   These were nearly $600 per year and would continue in the future.   His sufferings were great and will continue.

The judgment is therefore affirmed.   All concur.